UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

MEGHANN R. MILLER,
Plaintiff,

v.

THE KANSAS DEPARTMENT OF CHILDREN AND FAMILIES;
ASHLEY BEAUCHAMP, in her individual and official capacity;
MICHELLE MERRITT, in her official capacity;
JOHN AND JANE DOE DCF SUPERVISORS 1–10,
Defendants.

Civil Action No. _____
JURY TRIAL DEMANDED

## **COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, DAMAGES, AND RELATOR RECOVERY**

COMES NOW Plaintiff Meghann R. Miller, pro se, and alleges the following:

I. JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 31 U.S.C. § 3730 (False Claims Act).
2. Venue is proper under 28 U.S.C. § 1391, all relevant events occurred in Johnson County, Kansas, and the Defendants conduct business within this District.

II. PARTIES

3. Plaintiff, Meghann R. Miller, resides at 15783 S Gardner Place, Gardner, Kansas 66030. She is the biological mother of five minor children: M.M., C.B.M., T.M., J. N.M., and J.A.M.
4. The Kansas Department for Children and Families (DCF) is a state agency responsible for providing child protection and social services.

5. Defendant Ashley Beauchamp is a DCF caseworker sued in both her official and individual capacities for her role in authorizing the 2025 substantiation.

6. Defendant Michelle Merritt is a DCF investigator sued in her official capacity, who conducted the original investigation.

7. **John and Jane Doe DCF Supervisors 1–10** are unnamed individuals responsible for oversight, policy enforcement, or ratification of the actions alleged herein.

III. FACTUAL ALLEGATIONS

8. On January 29, 2024, the Johnson County Family Court issued a no-contact order preventing Plaintiff from seeing her children. This order was prompted by an emergency motion from the Guardian ad Litem and a therapist's report by Julia Battle. DCF had not substantiated any abuse at that time.

9. The initial report was filed before January 29, 2024. DCF has withheld the specific date. Investigator Michelle Merritt interviewed the children and determined by June 2024 that the allegations were unsubstantiated. Nevertheless, the case remained open.

10. Plaintiff began emailing and submitting formal complaints to DCF in July 2024 to demand closure, which went unaddressed until the January 22, 2025 letter.

11. Merritt later told Plaintiff that her supervisors had blocked case closure without giving a reason, indicating deliberate delay.

12. DCF's inaction violated federal law under CAPTA and state regulations.

13. On January 22, 2025, DCF General Counsel Marc Altenbernt acknowledged the unsubstantiated status and called the delay an "unintentional oversight." However, the letter excluded the report's original filing date. (Exhibit A)

14. The next day, January 23, 2025, DCF received a new abuse report, this time referencing Plaintiff's social media activity as evidence of emotional harm.

15. Plaintiff's advocacy via social media began approximately two months after the no-contact order, aimed at raising awareness about her case.

16. Even though Plaintiff had no contact with her children for nearly a year and no physical abuse was alleged, DCF substantiated this new report.

17. On March 18, 2025, Plaintiff was formally notified of the substantiation. (Exhibit B)

18. The timing of these events suggests that the new investigation was a form of retaliation for Plaintiff's prior complaints.
19. Plaintiff was not granted a hearing or access to case materials during the substantiation process.
20. A public records request and formal complaint submitted in December 2024 were disregarded. (Exhibit C)
21. DCF failed to correct false statements by the GAL and Julia Battle, which helped sustain the no-contact order.
22. Plaintiff reserves the right to bring future claims against the Guardian ad Litem and Julia Battle.

IV. LEGAL CLAIMS

COUNT I — Violation of First Amendment (42 U.S.C. § 1983)

23. Plaintiff engaged in constitutionally protected speech through her public advocacy.
24. DCF initiated a retaliatory investigation based on that speech.
25. This constitutes unlawful government retaliation.

COUNT II — Fourteenth Amendment Due Process Violation

26. Plaintiff has a fundamental liberty interest in the care, custody, and companionship of her children under *Troxel v. Granville*, 530 U.S. 57 (2000).
27. DCF deprived her of this interest without procedural safeguards, violating Mathews v. Eldridge, 424 U.S. 319 (1976).
28. The substantiation contradicted previous unsubstantiated findings and relied on protected speech.

COUNT III — False Claims Act Violation (31 U.S.C. § 3729 et seq.)

29. DCF submitted or caused to be submitted false reports to claim federal funds under Title IV-E and IV-B.
30. These reports falsely indicated active abuse findings despite internal knowledge that the case was unsubstantiated.[1]

31. A. Plaintiff, acting as a private relator under 31 U.S.C. § 3730(b), seeks to recover federal funds fraudulently claimed by DCF for administrative case maintenance and child welfare reimbursement under Titles IV-E and IV-B. DCF knowingly submitted false certifications of abuse status to maintain federal reimbursement eligibility after June 2024, in violation of applicable federal statutes and funding requirements.
32. Plaintiff seeks recovery on behalf of the United States as a private relator.

[1] DCF's substantiation finding was used to claim or retain federal Title IV-E foster care maintenance payments and Title IV-B child welfare services funds, which require valid and ongoing abuse determinations to justify continued eligibility. The substantiation, issued March 18, 2025, was knowingly false, as the agency had previously concluded in June 2024 that no abuse occurred. These actions constitute fraudulent certification of eligibility for federal reimbursement under 42 U.S.C. §§ 622, 670–679.

COUNT IV — Malicious Abuse of Process (Kansas Common Law)

33. Defendants misused DCF procedures to retaliate against Plaintiff and deny her due process.

COUNT V — Violations of Kansas Law and Constitution

34. Defendants failed to comply with the Kansas Administrative Procedure Act and state constitutional guarantees.
35. These failures include ignoring timelines under Kansas Admin. Regs. 30-46-10 and denying Plaintiff fair treatment.

V. RELIEF REQUESTED

Additionally, Plaintiff seeks an Ex Parte Emergency Temporary Restraining Order and Preliminary Injunction, pursuant to Rule 65(b) of the Federal Rules of Civil Procedure. The grounds for this request are outlined in the separately filed motion and supporting memorandum. Immediate relief is necessary to prevent irreparable harm from the unlawful substantiation issued on March 18, 2025.

1. Declare that Plaintiff's constitutional and statutory rights were violated;
2. Issue an Ex Parte Emergency Temporary Restraining Order pursuant to Fed. R. Civ. P. 65(b), followed by a preliminary and permanent injunction, requiring:
    a. Plaintiff's immediate removal from any DCF Central Registry;
    b. Expungement of the January 23, 2025 substantiation;
    c. An order prohibiting future publication or use of the substantiation without proper review;
3. Award compensatory damages in excess of $1,000,000 and punitive damages as appropriate;;
4. Provide relator recovery for federally misused funds;
5. Order DCF to revise internal procedures and release the requested records;
6. Grant attorney fees and costs under 42 U.S.C. § 1988;
7. Award any further relief this Court deems just.

## VI. JURY DEMAND

Plaintiff demands a jury trial on all issues triable as of right.

Respectfully submitted,

*/s/ Meghann R. Miller*

Meghann R. Miller, Pro Se
15783 S Gardner Place
Gardner, Kansas 66030
816-977-8328

Date: March 21, 2025

I, Meghann R. Miller, declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on March 21, 2025.

Meghann R. Miller