## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| MEGHANN R. MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 25-2145-KHV |
| | ) | |
| KANSAS DEPARTMENT OF CHILDREN AND | ) | |
| FAMILIES, ASHLEY BEAUCHAMP, in her | ) | |
| individual and official capacity, MICHELLE | ) | |
| MERRITT, in her individual and official capacity, | ) | |
| JOHN DOE SUPERVISORS 1–5, in their | ) | |
| individual and official capacities, and RANDY | ) | |
| MCCALLA, in his individual and official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER AND ORDER TO SHOW CAUSE

In a child custody dispute between plaintiff and her ex-husband, the District Court of Johnson County, Kansas ordered that plaintiff not have contact with her five children. On March 21, 2025, plaintiff filed suit pro se against the Kansas Department of Children and Families ("DCF"), and various individuals who are either DCF employees or provide services for DCF. Plaintiff alleges violation of her civil rights under 42 U.S.C. §§ 1983, 1985 and 1986, and violation of her rights under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. She also brings various state law claims. This matter is before the Court on the Motion To Dismiss Plaintiff's Amended Complaint Pursuant To Federal Rules Of Civil Procedure 12(b)(1) And (6) And Memorandum In Support (Doc. #31) which DCF, Michelle Merritt and Ashley Beauchamp filed July 16, 2025. For reasons stated below, the Court sustains defendants' motion.

### Factual Background

Highly summarized, plaintiff's First Amended Verified Complaint (Doc. #13) filed May 8,

2025, alleges as follows:[1]

In the District Court of Johnson County, Kansas, plaintiff and her ex-husband have a pending dispute which involves the custody of their five children. On January 29, 2024, based on unsubstantiated allegations of abuse and without an evidentiary hearing or notice to plaintiff, District Judge Keven O'Grady ordered that plaintiff not have contact with her children. Before January 29, 2024, Michelle Merritt, a DCF investigator, had informed Randy McCalla, the guardian ad litem, that the abuse allegations against plaintiff were unsubstantiated. Despite Merritt's report, McCalla sought to remove the children from plaintiff's custody. On June 5, 2024, Merritt told plaintiff that the abuse allegations were unfounded. Even so, unknown DCF supervisors blocked disclosure of this fact to the court.

---

[1]    Throughout the amended complaint, plaintiff refers to numerous exhibits, but she has not attached them to the complaint or otherwise included them in the record of this case. See, e.g., First Amended Verified Complaint (Doc. #13) at 4 (Exhibit A, B, C, EEE, NNN, UUU, VVV); id. at 5 (Exhibits D, E, F, P, Y, OO, PP, FFF, III); id. at 6 (Exhibits Z, AA, GGG, III, PPP, SSS, XXX); id. at 7 (Exhibits C, E, G, H, I, J, K, P, EEE, NNN, UUU, VVV). As best the Court can ascertain, plaintiff refers to exhibits which the Clerk filed on her behalf in Miller v. McCalla, D. Kan. No. 25-2180, which is also before the undersigned judge. See Exhibits In Support Of Complaint (Doc. #7, #8 and #9 filed April 8, 2025 in D. Kan. No. 25-2180). Because plaintiff did not include the case number on the exhibits and she did not submit exhibits with her amended complaint in this action, it appears that plaintiff intended that the Clerk would file the exhibits in both cases before the undersigned judge. Defendants do not argue that they did not receive the exhibits. The Court therefore considers the allegations in the First Amended Verified Complaint (Doc. #13) in this action and to the extent that plaintiff has referenced exhibits, the more than 800 pages of attachments to plaintiff's complaint filed in D. Kan. No. 25-2180.

In addition to the exhibits which plaintiff has referenced in her amended complaint, the Court takes judicial notice of the orders in Matter Of Marriage Of Meghann R. Miller And Craig R. Miller, Case No. 17-cv-3002, Div. 1, which plaintiff has included as attachments to her complaint filed in D. Kan. No. 25-2180. When deciding a motion to dismiss under Rule 12(b)(6), the Court may consider facts which are subject to judicial notice, i.e. facts which are not subject to reasonable dispute because they are generally known or capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); see Grynberg v. Koch Gateway Pipeline Co., 390 F.3d 1276, 1278 n.1 (10th Cir. 2004) (facts subject to judicial notice may properly be considered in a motion to dismiss).

On July 22, 2024, Judge O'Grady ordered plaintiff, her ex-husband and their children to participate in therapy so that plaintiff could restore contact with the children. <u>See</u> Exhibit Q (Doc. #7-16 filed in No. 25-2180). On August 1, 2024, Judge O'Grady overruled plaintiff's claims that McCalla lacked objectivity and her request to remove him as guardian ad litem. <u>See</u> Exhibit DDD (Doc. #9-3 filed in No. 25-2180).

On January 22, 2025, after repeated efforts by plaintiff to correct the record, DCF general counsel sent plaintiff a letter which acknowledged that it had previously closed the investigation because the allegations against her were unsubstantiated. <u>See</u> Exhibit E (Doc. #7-4 filed in No. 25-2180).

On January 23, 2025, DCF received a new report which alleged emotional harm to plaintiff's children from her social media activity. Ashley Beauchamp, a DCF social worker, told plaintiff that on January 22, 2025, she had interviewed plaintiff's children about her social media activity. Plaintiff denies that Beauchamp could have interviewed the children on January 22. On February 6, 2025, Beauchamp admitted that she relied on secondhand therapist and caregiver statements, did not review Merritt's findings and refused to provide plaintiff dates or sources of alleged interviews.

On February 25, 2025, in the state custody proceeding, plaintiff served DCF with a subpoena for records. DCF required that plaintiff and her ex-husband comply with its standard protective order. Plaintiff objected to the protective order because it did not allow her to make or retain copies of DCF records. Judge O'Grady overruled plaintiff's objection because she offered no compelling reason why she needed to copy DCF records or access them without supervised viewing at the courthouse. <u>See</u> Exhibit SSS (Doc. #9-17 filed in No. 25-2180).

On March 14, 2025, Judge O'Grady overruled plaintiff's motion to modify the temporary

parenting plan on account of alleged violation of her rights to procedural due process under the Fourteenth Amendment.  See Exhibit TTT (Doc. #9-18 filed in No. 25-2180).  He noted that plaintiff had notice of the proceedings (including the upcoming trial in April of 2025), the claims made and the positions of her ex-husband and the guardian ad litem.

On March 18, 2025, in reliance on fabricated evidence and without interviewing plaintiff, Beauchamp concluded that the allegations of harm to plaintiff's children were substantiated.  First Amended Verified Complaint (Doc. #13) at 5.  Specifically, Beauchamp stated that "[a]ll children report a negative impact to their emotional and social wellbeing due to their mother talking about them on social media.  Negative impact was confirmed through interviews with the children, the children's therapists, and caregivers."  Exhibit Y (Doc. #7-26 filed in No. 25-2180) at 1.  Plaintiff alleges that Beauchamp based her finding of abuse on plaintiff's TikTok posts and defamatory posts by Sarah Jo Crawford and Beth Nichols.

A form attached to Beauchamp's findings advised plaintiff that within 30 days of the notice, she could appeal the decision by filing with the Officer of Administrative Hearings in Topeka, Kansas, a written request for fair hearing pursuant to K.A.R. § 30-7-68 et seq.  Id. at 2. The form further advised plaintiff that if she was dissatisfied with the officer's decision, she could request review by the State Appeals Committee and that its decision could be appealed to district court.  Id.

On April 1, 2025, some three weeks before the scheduled trial of the custody dispute, Judge O'Grady canceled trial because plaintiff had not paid outstanding guardian ad litem fees.  He also declined to rule on plaintiff's renewed request to remove McCalla as the guardian ad litem.  On April 4, 2025, for punitive reasons, Judge O'Grady imposed a selective Artificial Intelligence ("AI") certification rule, which mandated that plaintiff disclose her use of AI in pleadings.  Plaintiff

alleges that the AI certification rule obstructed her access to the courts.

On March 21, 2025, plaintiff filed this suit against DCF, McCalla and others associated with DCF.  On April 7, 2025, plaintiff filed a separate suit against McCalla, the court-appointed therapist, a psychologist who evaluated plaintiff and Johnson County.  See Miller v. McCalla, D. Kan. No. 25-2180-KHV.  At some point, plaintiff apparently filed suit related to one of her daughter's child in need of care proceeding from 2022 to 2023.  First Amended Verified Complaint (Doc. #13) at 2–3.  Plaintiff also filed suit against two individuals (presumably Crawford and Nichols) who allegedly made false and defamatory statements about her parenting and mental health.  In this case, plaintiff alleges that Beauchamp failed to investigate these defamatory statements, which contributed to DCF's finding of abuse.

Since January 29, 2024, except for limited weekly reunification sessions with her three youngest children, plaintiff has been separated from her children (ages 17, 14, 12, 11 and 11).

Plaintiff has severe anxiety and post-traumatic stress disorder.  In court proceedings and during investigations by DCF and its agents, plaintiff consistently requested reasonable accommodations.  Even so, plaintiff was "excluded from meaningful participation in her custody case, denied access to DCF records, and subjected to vague and unreviewable restrictions by GAL McCalla and DCF investigators, without consideration of her disabilities."  First Amended Verified Complaint (Doc. #13) at 16.  "Plaintiff's requests for accommodations, including extended response times, virtual participation, and disability recognition, were either ignored or used against her to justify adverse decisions and substantiations."  Id. at 16–17.

In a nine-count amended complaint in this case, plaintiff alleges violation of her civil rights under 42 U.S.C. §§ 1983, 1985 and 1986, violation of her rights under the ADA and various state

law claims.[2]

Under Section 1983, plaintiff alleges that all defendants violated her rights to procedural and substantive due process under the Fourteenth Amendment (Count I) and her right to free speech under the First Amendment (Count II).

Against Beauchamp, McCalla and Doe Supervisors, plaintiff alleges that they conspired to interfere with her civil rights in violation of 42 U.S.C. § 1985(3) (Count III), violated her parental rights under the Fourteenth Amendment in violation of 42 U.S.C. § 1983 (Count V) and intentionally inflicted emotional distress in violation of Kansas law (Count VIII).

Against Beauchamp and McCalla, plaintiff asserts that they fraudulently misrepresented matters in the state court custody and DCF proceedings (Count VI).

Against DCF, Beauchamp and McCalla in his official capacity, plaintiff alleges that they excluded or denied her DCF benefits and services because of her disability and did not accommodate her disabilities in violation of the ADA, 42 U.S.C. § 12101 et seq. (Count IX).[3] On her ADA claim, plaintiff seeks damages for psychological distress, procedural disadvantage and the loss of contact with her five children.

The gravamen of plaintiff's complaint is that McCalla and DCF employees who gave

---

[2]    The Court does not include plaintiff's allegation that her claims "pertain solely to constitutional and statutory injuries" which she and her daughter suffered during a child in need of care proceeding from 2022 to 2023. First Amended Verified Complaint (Doc. #13) at 2–3. Plaintiff apparently raised those claims in a third action, which she asserts does not duplicate the claims which she has raised in this action or in D. Kan. No. 25-2180. See id. at 2.

[3]    As noted, plaintiff asserts nine counts, but the remaining two counts do not involve DCF, Beauchamp and Merritt. Against Doe Supervisors, plaintiff asserts that they neglected to prevent the conspiracy to interfere with her civil rights in violation of 42 U.S.C. § 1986 (Count IV). Against McCalla, plaintiff asserts that he maliciously abused the legal process in violation of Kansas law (Count VII).

information to him misled Judge O'Grady in the custody dispute. Although plaintiff has not named

Judge O'Grady as a defendant, she alleges that his conduct has "obstructed her access to justice."

First Amended Verified Complaint (Doc. #13) at 6, 8.

## Legal Standards

The Court affords a pro se plaintiff some leniency and liberally construes her filings. See

James v. Wadas, 724 F.3d 1312, 1315 (10th Cir. 2013). Although the Court holds a pro se litigant's

filings to a less stringent standard than formal pleadings drafted by attorneys, a pro se party must

follow the same rules of procedure as all other litigants. See Garrett v. Selby Connor Maddux &

Janer, 425 F.3d 836, 840 (10th Cir. 2005).

DCF seeks to dismiss plaintiff's claims for lack of subject matter jurisdiction.

Rule 12(b)(1) motions generally take the form of facial attacks on the complaint or factual attacks

on the accuracy of its allegations. Laufer v. Looper, 22 F.4th 871, 875 (10th Cir. 2022). Here,

DCF challenges the face of the complaint, so the Court presumes the accuracy of plaintiff's factual

allegations and does not consider evidence outside the complaint. Baker v. USD 229 Blue Valley,

979 F.3d 866, 872 (10th Cir. 2020).

Defendants also seek to dismiss plaintiff's complaint under Rule 12(b)(6), Fed. R. Civ. P.,

claiming that it fails to state a claim on which the Court can grant relief. In ruling on a motion to

dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual

allegations and determines whether they plausibly give rise to an entitlement of relief. Ashcroft

v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain

sufficient factual matter to state a claim which is plausible—and not merely conceivable—on its

face. Id.; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a

complaint states a plausible claim for relief, the Court draws on its judicial experience and common

sense.  Iqbal, 556 U.S. at 679–80.

Plaintiff bears the burden to frame her claims with enough factual matter to suggest that she is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements.  See Twombly, 550 U.S. at 556.  Plaintiff makes a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged.  Iqbal, 556 U.S. at 678.  Plaintiff must show more than a sheer possibility that defendants acted unlawfully—it is not enough to plead facts that are "merely consistent with" liability.  Id. (quoting Twombly, 550 U.S. at 557).

A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand.  Iqbal, 556 U.S. at 678.  Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the pleading has alleged—but has not shown—that the pleader is entitled to relief.  See id. at 679.  The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case.  Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

## Analysis

### I.    Eleventh Amendment Sovereign Immunity

Under Section 1983, plaintiff alleges that all defendants violated her rights to procedural and substantive due process under the Fourteenth Amendment (Count I) and her right to free speech under the First Amendment (Count II).  DCF argues that the Eleventh Amendment bars

plaintiff's constitutional claims against it.[4]

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Eleventh Amendment immunity applies to any action brought against a state in federal court and applies regardless of the nature of the relief sought. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Steadfast Ins. Co. v. Ag. Ins. Co., 507 F.3d 1250, 1252 (10th Cir. 2007).

Unless a state waives its Eleventh Amendment sovereign immunity, federal courts cannot exercise either diversity or federal question jurisdiction over the state. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996); Peterson v. Martinez, 707 F.3d 1197, 1205 (10th Cir. 2013). Congress did not abrogate the states' sovereign immunity when it enacted Section 1983. Quern v. Jordan, 440 U.S. 332, 338–45 (1979). Because DCF is an arm of the state, the Court does not have jurisdiction over plaintiff's Section 1983 claims against it. Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002). The Court therefore dismisses Counts I and II against DCF for lack of jurisdiction.

On Counts I and II, plaintiff also seeks relief from Beauchamp and Merritt in their official capacities. Because DCF asserts sovereign immunity on Counts I and II, the Court sua sponte addresses whether Beauchamp and Merritt in their official capacities are entitled to sovereign immunity. See Hennessey v. Univ. of Kan. Hosp. Auth., 53 F.4th 516, 531 (10th Cir. 2022) (district court may raise Eleventh Amendment sovereign immunity sua sponte); see also 28 U.S.C.

---

[4]    DCF does not assert that under the Eleventh Amendment, sovereign immunity applies to plaintiff's claim against DCF under the ADA.

§ 1915A(b) (district court shall dismiss complaint if it is frivolous, malicious, fails to state claim on which relief may be granted or seeks monetary relief from defendant who is immune from suit). In all respects other than name, a suit against a DCF employee in her official capacity is a suit against DCF.  See Kentucky v. Graham, 473 U.S. 159, 166 (1985).  The Eleventh Amendment thus bars a request for money damages against the state and state officers in their official capacities. See Williams v. Utah Dep't of Corr., 928 F.3d 1209, 1212 (10th Cir. 2019) (Eleventh Amendment extends to arms of state and state officials sued for damages in official capacity).  Likewise, the Eleventh Amendment bars claims for injunctive and declaratory relief unless such claims seek "prospective" relief and the official has a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.  K.A. v. Barnes, 134 F.4th 1067, 1077 (10th Cir. 2025) (citing Ex parte Young, 209 U.S. 123 (1908)).

Plaintiff alleges that she seeks relief against state officials in their official capacities for prospective relief to halt ongoing constitutional violations, First Amended Verified Complaint (Doc. #13) at 3, but she fails to allege how Merritt (a DCF investigator) or Beauchamp (a DCF social worker) have a particular duty to enforce a specific statute and a demonstrated willingness to exercise that duty.  K.A. v. Barnes, 134 F.4th at 1077 (sovereign immunity bars claim because plaintiff failed to show that statute gives someone in defendant's position responsibility for enforcing statute); Free Speech Coal., Inc. v. Anderson, 119 F.4th 732, 739 (10th Cir. 2024) (Ex parte Young, 209 U.S. at 157, requires something more than mere general duty to enforce law). The Court therefore dismisses for lack of jurisdiction Counts I and II against Beauchamp and Merritt in their official capacities.[5]

---

[5]    Under Sections 1983 and 1985, plaintiff also alleges that Beauchamp conspired to
(continued. . .)

## II.    Claims Against Michelle Merritt In Individual Capacity (Counts I and II)

Plaintiff also brings Counts I and II against Merritt in her individual capacity.  Under Section 1983, plaintiff alleges generally that all defendants violated her rights to procedural and substantive due process under the Fourteenth Amendment (Count I) and free speech under the First Amendment (Count II).  Because vicarious liability does not apply to claims under Section 1983, plaintiff must allege that Merritt personally participated in the alleged constitutional violations. Durkee v. Minor, 841 F.3d 872, 877 (10th Cir. 2016); see Brown v. Montoya, 662 F.3d 1152, 1163 (10th Cir. 2011) (in Section 1983 action, complaint must make clear exactly who is alleged to have done what to whom).  Plaintiff faults McCalla and Beauchamp for acting inconsistently with Merritt's findings, First Amended Verified Complaint (Doc. #13) at 4–5, but plaintiff does not allege how Merritt participated in violating plaintiff's constitutional rights.  Indeed, plaintiff alleges that Merritt's findings support plaintiff's position that the finding of abuse was not substantiated.

In her brief in opposition to defendants' motion to dismiss, plaintiff cites Foote v. Spiegel, 118 F.3d 1416 (10th Cir. 1997), for the proposition that a defendant "may be liable if she knew of constitutional violations and failed to act to prevent them."  Plaintiff's Memorandum In Opposition To Defendants' Motion To Dismiss (Doc. #34) filed July 28, 2026 at 6.  Foote does not include the cited language at all.  It cites the well-established principle that individual liability under Section 1983 "must be based on personal involvement in the alleged constitutional violation."

---

[5](…continued)
interfere with plaintiff's civil rights (Count III) and violated her parental rights under the Fourteenth Amendment (Count V).  For substantially the reasons stated above, to the extent that plaintiff attempts to assert Counts III and V against Beauchamp in her official capacity, the Court dismisses the claims for lack of jurisdiction based on sovereign immunity.

Foote, 118 F.3d at 1423.  Foote contains no language which suggests that a subordinate employee can be liable when her supervisor or a guardian ad litem does not follow a DCF employee's recommendation or findings.  An individual defendant can be liable under Section 1983 if she is in a "position of responsibility," knew or should have known of misconduct and yet failed to act to prevent future harm.  McClelland v. Facteau, 610 F.2d 693, 697 (10th Cir. 1979).  Because plaintiff does not allege facts which suggest that Merritt was in a position of responsibility to correct wrongful conduct by Beauchamp, McCalla and unnamed DCF supervisors, Merritt cannot be liable for their conduct.  Cf. id. (police chief has duty of supervision to correct misconduct of which he has notice).  The Court therefore dismisses for failure to state a claim Counts I and II against Merritt in her individual capacity.

### III.    Claims Against Ashley Beauchamp In Individual Capacity (Counts I, II, III And V)

Beauchamp seeks to dismiss Counts I, II, III and V because she is entitled to qualified immunity.   Qualified immunity shields government officials from liability for performing discretionary functions if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  A defendant who asserts qualified immunity—including in a motion to dismiss—is presumptively immune from suit.  Cuervo v. Sorenson, 112 F.4th 1307, 1314 (10th Cir. 2024).  On a motion to dismiss, plaintiff can overcome the presumption if she establishes that the complaint alleges factual content from which the Court can reasonably infer that (1) defendant's conduct violated a constitutional right and (2) that right was clearly established at the time of the alleged violation.  Id.; see Iqbal, 556 U.S. at 678.

Whether a right is "clearly established" is an objective test.  A constitutional right is clearly established when it is "sufficiently clear that every reasonable official would have understood that

what he is doing violates that right." Heard v. Dulayev, 29 F.4th 1195, 1203 (10th Cir. 2022) (citations omitted). Under this demanding standard, the alleged violation "must have a sufficiently clear foundation in then-existing precedent" either with "controlling authority or a robust consensus of cases of persuasive authority." Id. (citations omitted). The Supreme Court has warned against defining a clearly established right "at a high level of generality" and emphasized that the law must be "particularized to the facts of the case," but this does not mean that a right is only clearly established if a case exists that is factually identical. Est. of Ceballos v. Husk, 919 F.3d 1204, 1215 (10th Cir. 2019) (citations omitted). This makes good sense: if a right is clearly established only when a prior case presents identical facts, qualified immunity would apply under every different fact pattern. Under this standard, officials would always be entitled to qualified immunity so long as their actions—no matter how outrageous or harmful—were sufficiently novel. While the case need not be directly on point, the "existing precedent must place the lawfulness of the defendant's conduct beyond debate." Heard, 29 F.4th at 1203 (citations and brackets omitted).

A.    Procedural Due Process

Plaintiff alleges that Beauchamp failed to provide plaintiff procedural due process in violation of the Fourteenth Amendment. Specifically, plaintiff alleges that Beauchamp missed the deadline for substantiating abuse and that before she issued her finding, she did not give plaintiff notice, an interview or a hearing. First Amended Verified Complaint (Doc. #13) at 9 (contrary to Merritt's findings, Beauchamp found abuse but relied on unverified third-party reports, did not interview plaintiff and denied plaintiff notice and a hearing).[6] Beauchamp argues that plaintiff has

---

[6]    Plaintiff also alleges that DCF did not provide a post-deprivation hearing. Id. Because DCF is entitled to sovereign immunity on plaintiff's procedural due process claim, the Court does not consider plaintiff's allegation that she did not receive a post-deprivation hearing.

not stated a claim for violation of her right to procedural due process and that any alleged violation was not clearly established.

Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the due process clause of the Fourteenth Amendment. Mathews v. Eldridge, 424 U.S. 319, 332 (1976); see U.S. Const. amend. XIV, § 1 (citizens protected from deprivation of "life, liberty, or property, without due process of law"). To state a procedural due process claim, plaintiff must allege that (1) she possessed a constitutionally cognizable liberty or property interest to which due process protection applied; and (2) Beauchamp did not afford her a level of process which was constitutionally sufficient. PJ ex rel. Jensen v. Wagner, 603 F.3d 1182, 1200 (10th Cir. 2010).

What process is due is measured by a flexible standard that depends on the practical requirements of the circumstances. See Mathews, 424 U.S. at 334. The Court considers the following three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest. Gilbert v. Homar, 520 U.S. 924, 931–32 (1997) (citing Mathews, 424 U.S. at 335).

Under the Fourteenth Amendment, parents have a protected liberty interest in the care, custody and control of their children. Troxel v. Granville, 530 U.S. 57, 65 (2000) (liberty interest of parents in care, custody and control of their children is perhaps oldest of fundamental liberty interests recognized by Supreme Court). Therefore, procedural due process ordinarily requires a pre-deprivation hearing before the state can remove a child from a parent's custody. See Spielman v. Hildebrand, 873 F.2d 1377, 1385 (10th Cir. 1989) (hearing required before person deprived of protected interest except for extraordinary situations where valid governmental interest justifies

postponing hearing until after event).

Plaintiff argues that Beauchamp deprived her of a liberty interest in the custody and visitation of her children. See Plaintiff's Memorandum In Opposition To Defendants' Motion To Dismiss (Doc. #34) at 4 (citing Gomes v. Wood, 451 F.3d 1122, 1127 (10th Cir. 2006) (state officials may not remove children from home, through either temporary seizures or permanent termination of parental rights, without providing due process of law)).[7]  The amended complaint does not allege facts which would suggest that Beauchamp's finding resulted in the seizure of plaintiff's children from her custody or reduced visitation.  Indeed, plaintiff alleges that except for limited weekly reunification sessions with her three youngest children, she has been separated from them since January 29, 2024—more than one year before Beauchamp's finding.  When Beauchamp issued her finding in March of 2025, plaintiff's liberty interest in the custody of and visitation with her kids was severely restricted by the state court's temporary custody plan pending trial.  See Zakrzewski v. Fox, 87 F.3d 1011, 1014 (8th Cir. 1996) (divorce decree and Nebraska law—which provided limited visitation to plaintiff—substantially reduced plaintiff's liberty interest in care, custody and management of son); Wise v. Bravo, 666 F.2d 1328, 1333 (10th Cir. 1981) (no cognizable due process protection under Fourteenth Amendment where police removed

---

[7]    A state can also create a protected liberty interest by placing substantive limitations on official discretion.  Olim v. Wakinekona, 461 U.S. 238, 249 (1983); see Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 462 (1989) (most common manner in which state creates liberty interest is by establishing substantive predicates to govern official decisionmaking and mandating outcome to be reached upon finding that relevant criteria have been met).  Plaintiff does not assert that Kansas law creates such a liberty interest.  In any event, because Kansas law does not restrict the manner and method of an abuse investigation (e.g., law does not restrict use of hearsay or secondhand reports from therapists or caregivers) or require a hearing before a DCF social worker substantiates a finding of abuse, plaintiff cannot establish a protected liberty interest under state law.  See Doyle v. Okla. Bar Ass'n, 998 F.2d 1559, 1570 (10th Cir. 1993) (mere expectation of receiving state afforded process does not itself create independent liberty interest protected by Due Process Clause).

child from plaintiff's custody during visitation because deprivation of visitation rights was insubstantial in duration and effect); see also Payne v. Wilder, No. CV 16-0312 JB/GJF, 2017 WL 3706063, at *39 (D.N.M. Aug. 24, 2017) (defendant's conduct did not result in deprivation of plaintiff's parental custody, which distinguishes case from situations where state physically removed children from allegedly abusive living situation).

At most, plaintiff alleges facts which suggest that Beauchamp's finding made it more difficult to obtain future visitation or custody of her children. Her liberty interest in future visitation or custody is minimal, however, when balanced against the state's interest in protecting children from abuse. See Terry v. Richardson, 346 F.3d 781, 786 (7th Cir. 2003) (where loss of liberty is small—such as single day of visitation—due process does not require elaborate procedures in advance, even assuming that pre-deprivation process is required at all). The Court therefore finds that Fourteenth Amendment procedural due process protections did not require Beauchamp to interview plaintiff or hold a hearing before she found that the abuse was substantiated. See Brittain v. Hansen, 451 F.3d 982, 1002 (9th Cir. 2006) (under Mathews, no pre-deprivation hearing required before plaintiff deprived of week of visitation because available state procedures sufficient to satisfy requirements of due process); Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir. 1998) (no clearly established right to pre-deprivation hearing before reduction of visitation).

DCF provided a procedure for plaintiff to appeal Beauchamp's finding and protect her interest in future modifications of the custody plan in the state court case. As explained above, a form attached to Beauchamp's findings advised plaintiff that within 30 days of the notice, she had the right to appeal the decision by filing with the Officer of Administrative Hearings in Topeka, Kansas, a written request for fair hearing pursuant to K.A.R. § 30-7-68 et seq.. Exhibit Y (Doc.

#7-26 filed in No. 25-2180) at 2. The form further advised plaintiff that if she was dissatisfied with the hearing officer's decision, she could request review by the State Appeals Committee, then the district court. Id. DCF's appeal process provided constitutionally sufficient procedures to protect plaintiff's alleged liberty interest in future visitation and custody of her children. See Zakrzewski, 87 F.3d at 1014 (availability of state post deprivation remedies to enforce visitation orders constitutionally sufficient); Fitzgerald v. Williamson, 787 F.2d 403, 408 (8th Cir. 1986) (no requirement of pre-deprivation hearing before visitation can be reduced based on suspicion of child abuse because parents could have petitioned juvenile court for modification of custody orders at any time); see also Santana v. City of Tulsa, 359 F.3d 1241, 1244 (10th Cir. 2004) (plaintiff cannot create procedural due process claim by ignoring established procedures such as administrative appeal).

Plaintiff argues that she could not "meaningfully" appeal Beauchamp's finding because DCF did not inform her of the underlying evidence. Plaintiff's Memorandum In Opposition To Defendants' Motion To Dismiss (Doc. #34) at 7. The DCF Notice explained that Beauchamp based her decision on the reports of all children about the negative impact of plaintiff's comments on social media and that Beauchamp confirmed the negative impact through interviews with the children, the children's therapists and caregivers. Exhibit Y (Doc. #7-26 filed in No. 25-2180) at 1. Plaintiff has not alleged facts which suggest that she could not appeal the basis of Beauchamp's finding.

Even if plaintiff sufficiently alleged a violation of her procedural due process rights, Beauchamp is entitled to qualified immunity because her conduct did not violate clearly established law. Plaintiff points to no cases with similar facts, let alone a case from the Supreme Court or Tenth Circuit. On this record, with respect to plaintiff's claim for violation of a right to

procedural due process, Beauchamp is entitled to qualified immunity because the law was not clearly established at the time of the alleged violation. The Court therefore dismisses plaintiff's procedural due process claim against Beauchamp for failure to state a claim on which relief can be granted.

B.    Substantive Due Process

Plaintiff alleges generally that all defendants violated her rights to substantive due process by undermining familial integrity or association. First Amended Verified Complaint (Doc. #13) at 10. Beauchamp argues that plaintiff has not alleged that her conduct violated a constitutional right or that any alleged right was clearly established.

Familial association claims are "grounded in the shocks-the-conscience approach to substantive due process claims challenging executive action." Halley v. Huckaby, 902 F.3d 1136, 1155 (10th Cir. 2018). Plaintiff must base her familial association claim on allegations of abusive government authority. Doe v. Woodard, 912 F.3d 1278, 1301 (10th Cir. 2019). To state a familial association claim under Section 1983, plaintiff must allege facts which establish that (1) a state official intended to deprive plaintiff of a protected relationship with a family member and (2) the intrusion into the familial relationship was unwarranted by state interests in the health and safety of the family member. Halley, 902 F.3d at 1154; see Starkey ex rel. A.B. v. Boulder Cnty. Social Servs., 569 F.3d 1244, 1253 (10th Cir. 2009) (fundamental right of parents to make decisions concerning care, custody and control of children not absolute or unqualified, and always must be balanced against governmental interest involved).

Plaintiff alleges generally that all defendants deprived her of substantive due process by "fabricating allegations, suppressing evidence, and imposing a pay-to-parent system via [guardian ad litem] fees." First Amended Verified Complaint (Doc. #13) at 8–9. Plaintiff improperly refers

to defendants collectively and does not allege with specificity what role Beauchamp played in intruding into the familial relationship.[8]  See Robbins v. Oklahoma, 519 F.3d 1242, 1250 (10th Cir. 2008) (reference to collective defendants makes it is impossible to ascertain what particular unconstitutional acts each defendant allegedly committed).  As noted above, plaintiff alleges that except for limited weekly reunification sessions with her three youngest children, she has been separated from them since January 29, 2024—more than one year before Beauchamp's finding.  As noted above, in April of this year, the state court continued trial of the custody matter and apparently continued the temporary custody plan, which severely restricts plaintiff's ability to visit her children.  Because the amended complaint does not plausibly allege that Beauchamp's finding made a difference in the state court's custody plan, she has not stated a liberty interest which is entitled to substantive due process protection.  Plaintiff therefore has not stated a claim against Beauchamp for violation of her right to substantive due process.  Cf. Brittain, 451 F.3d at 992 (loss of single week of visitation not fundamental right, so substantive due process does not provide remedy).

Even if plaintiff could allege a protected liberty interest, she has not alleged facts which plausibly suggest that Beauchamp's conduct was conscience-shocking.  Plaintiff alleges that Beauchamp's substantiation letter "falsely claimed interviews with children confirmed harm, suggesting fabricated evidence."  First Amended Verified Complaint (Doc. #13) at 5.  The amended complaint appears to suggest that Beauchamp falsely claimed that she—rather than therapists or caregivers—had personally interviewed the children and that she refused to provide

---

[8]    Likewise, in her brief in opposition, plaintiff argues generally that all defendants "withheld evidence, retaliated against her advocacy, and denied records essential to preserving her parental relationship."  Plaintiff's Memorandum In Opposition To Defendants' Motion To Dismiss (Doc. #34) at 4.

plaintiff with dates or sources of the alleged interviews.  See id. (Beauchamp "admitted she relied on secondhand therapist and caregiver statements").  The complaint does not allege facts which suggest that Beauchamp fabricated the evidence of harm to the children—only that she did not report the actual source of the evidence.  Such behavior is not conscience-shocking in light of the state's interest in protecting the welfare of children, so plaintiff cannot state a claim for violation of her rights to substantive due process.  See Halley, 902 F.3d at 1155 (familial association claims grounded in shocks-the-conscience approach to substantive due process claims).

Even if plaintiff could plausibly allege a violation of her substantive due process rights, Beauchamp is entitled to qualified immunity because her conduct did not violate clearly established law.  Plaintiff points to no cases with similar facts, let alone a case from the Supreme Court or Tenth Circuit.  Because the law was not clearly established at the time of the alleged violation of plaintiff's substantive due process rights, Beauchamp is entitled to qualified immunity. The Court therefore dismisses plaintiff's substantive due process claim against her for failure to state a claim on which relief can be granted.[9]

C.    First Amendment Retaliation

Plaintiff alleges that Beauchamp "retaliated" against her "protected social media speech" on TikTok.  First Amended Verified Complaint (Doc. #13) at 10.  Specifically, plaintiff alleges

_____

[9]    In Count V, plaintiff attempts to assert a separate claim for "violation of parental rights" under the Fourteenth Amendment.  First Amended Verified Complaint (Doc. #13) at 13. This claim is indistinguishable from plaintiff's claim that Beauchamp violated plaintiff's rights to procedural and substantive due process under the Fourteenth Amendment.  See id. ("Beauchamp's substantiation without process obstructed Plaintiff's parental role."); id. at 14 (Beauchamp's conduct "shocks the conscience and infringe[s] Plaintiff's right to direct her children's upbringing").  For substantially the reasons stated above, the Court dismisses plaintiff's separate claim that Beauchamp violated plaintiff's parental rights for failure to state a claim on which relief can be granted.

that Beauchamp substantiated the finding of abuse by plaintiff "based on her TikTok activity, relying on defamatory posts by Sarah Crawford and Beth Nichols without verifying their accuracy, [and] despite Plaintiff's explanation that her children were unaware of the posts." Id. Beauchamp argues that plaintiff has failed to state a claim for First Amendment retaliation.

To state a claim, plaintiff must plead facts which show that (1) she engaged in activity which the First Amendment protects; (2) Beauchamp's actions injured her in a way that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) her protected activity substantially motivated Beauchamp's actions. Nielander v. Bd. of Cnty. Comm'rs, 582 F.3d 1155, 1165 (10th Cir. 2009). As to the third element, plaintiff must allege facts which suggest that "but for" a retaliatory motive, Beauchamp would not have substantiated the finding of abuse. Bustillos v. City of Artesia, 98 F.4th 1022, 1036 (10th Cir. 2024); Nieves v. Bartlett, 139 S. Ct. 1715, 1722 (2019) (plaintiff must establish causal connection between defendant's retaliatory animus and subsequent injury). Beauchamp argues that plaintiff has failed to state a claim because Kansas has a compelling interest in the health and safety of children within its borders. The Court construes Beauchamp's argument to challenge whether the amended complaint states facts which satisfy the third element of a First Amendment retaliation claim.

Plaintiff alleges facts which suggest that Beauchamp substantiated the abuse finding because of plaintiff's TikTok posts and defamatory posts by Crawford and Nichols. The alleged fact that Beauchamp's finding was based in part on plaintiff's speech does not suggest a retaliatory motive. The State of Kansas has a compelling interest in the health and safety of the children within its borders. Likewise, DCF has a statutory duty to investigate allegations of abuse. In investigating allegations of abuse based on parental speech, DCF can consider that speech without violating the parent's First Amendment rights. See Waters v. Churchill, 511 U.S. 661, 670 (1994)

(although First Amendment creates strong presumption against punishing protected speech even inadvertently, balance need not always be struck in that direction).  Plaintiff alleges in conclusory terms that all defendants "retaliated," but she does not allege facts which plausibly suggest that but for Beauchamp's retaliatory animus, she would not have substantiated the finding of abuse.  Plaintiff therefore cannot state a claim for First Amendment retaliation against Beauchamp.  See Bustillos, 98 F.4th at 1036 (plaintiff must allege that "but for" retaliatory motive, defendant would not have taken adverse action); see also Gee v. Pacheco, 627 F.3d 1178, 1191 (10th Cir. 2010) (mere allegations of constitutional retaliation will not suffice; plaintiff must allege specific facts showing retaliation because of exercise of constitutional rights).  Even if plaintiff could plausibly allege a violation of her First Amendment rights, she has not shown that any such right was clearly established at the time of Beauchamp's conduct.  The Court therefore dismisses plaintiff's First Amendment retaliation claim against Beauchamp for failure to state a claim on which relief can be granted.

      D.    <u>Conspiracy To Violate Civil Rights</u>

Plaintiff alleges that Beauchamp conspired with McCalla and Doe Supervisors to interfere with her civil rights.  Beauchamp argues that plaintiff has not alleged a violation of Section 1985(3) that was clearly established.

To state a claim under 42 U.S.C. § 1985(3), plaintiff must allege facts which establish (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom.  Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993).  The Supreme Court has clarified that Section 1985(3) applies only to conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus."  Griffin v. Breckenridge, 403 U.S. 88, 102

(1971).

Beauchamp argues that it is questionable whether discrimination based on gender is actionable under Section 1985(3), so plaintiff has not alleged a violation of clearly established law. In <u>Tilton</u>, the Tenth Circuit noted that "the Supreme Court has held that 'it is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause.'"  6 F.3d at 686 (quoting <u>United Bhd. of Carpenters & Joiners of Am., Local 610, AFL–CIO v. Scott</u>, 463 U.S. 825, 836 (1983)).  Since <u>Tilton</u>, neither the Supreme Court nor the Tenth Circuit has directly addressed whether Section 1985(3) applies to gender discrimination.  <u>See</u> <u>Yaklich v. Grand Cnty.</u>, 278 F. App'x 797, 802 (10th Cir. 2008) (because plaintiff's claim fails for separate reason, court declines to address whether gender is protected class under Section 1985(3)).  Even if the Court determined that Section 1985(3) applies to gender discrimination, <u>see</u> <u>Lesley v. Bennett</u>, 778 F. Supp. 3d 1201, 1215 (D. Wyo. 2025), plaintiff has not shown that Beauchamp violated law which was clearly established law at the time of the alleged violation.  Beauchamp therefore is entitled to qualified immunity on plaintiff's claim under Section 1985(3).  The Court dismisses plaintiff's claim against Beauchamp under Section 1985(3) for failure to state a claim.[10]

## IV.    ADA Claim Against DCF And Beauchamp

Plaintiff alleges that she has severe anxiety and PTSD, and that DCF and Beauchamp did not accommodate her and discriminated against her because of her disability in violation of the

---

[10]    In addition, the amended complaint does not allege facts which plausibly suggest coordinated action between Beauchamp and the other defendants.  <u>Cf.</u> <u>First Amended Verified Complaint</u> (Doc. #13) at 11 (non-defendants Crawford and Nichols likely coordinated with plaintiff's ex-husband); <u>id.</u> at 12 (defendants had "shared objective").

ADA.[11]  DCF argues that plaintiff's amended complaint fails to state a claim under the ADA.

In 1990, Congress enacted the ADA to remedy widespread discrimination against disabled individuals.  PGA Tour, Inc. v. Martin, 532 U.S. 661, 674 (2001).  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  To state a claim under Title II of the ADA, plaintiff must allege facts which establish that (1) she is a qualified individual with a disability, (2) DCF excluded her from participation in or denied the benefits of its services, programs or activities, or otherwise discriminated against her; and (3) DCF took such action because of her disability.  J.V. v. Albuquerque Pub. Sch., 813 F.3d 1289, 1295 (10th Cir. 2016).  Based on the second element, courts recognize two types of claims: (1) exclusion from or denial of benefits and (2) discrimination.  Id.  Plaintiff can establish discrimination in three ways: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation.  Id.

Liberally construed, plaintiff's amended complaint asserts that DCF denied her benefits, intentionally discriminated against her and failed to make reasonable accommodations.

A.    Denial Of Benefits

Plaintiff alleges generally that she was "excluded from meaningful participation in her

---

[11]    Title II of the ADA applies only to public entities and prohibits discrimination against qualified individuals with disabilities when such entities are providing or operating public services, programs or activities.  Cohen v. Howard, No. 24-1202, 2024 WL 4764061, at *1 (10th Cir. Nov. 13, 2024) (citing 42 U.S.C. § 12132; Tennessee v. Lane, 541 U.S. 509, 517 (2004)).  Claims under Title II can only be asserted against an individual in that person's official capacity.  Id.  The Court therefore construes plaintiff's ADA claim against Beauchamp only in her official capacity, which in effect is a claim against DCF.

custody case" and denied access to DCF records.  <u>First Amended Verified Complaint</u> (Doc. #13)

at 16.  Plaintiff does not allege who excluded her from participation in her custody case or denied

her access to records.[12]  Plaintiff's undated, conclusory statements do not plausibly allege how

DCF excluded her from participation in or denied her the benefits of a DCF service, program or

activity.  Even if plaintiff could allege that DCF employees took such actions, she has not alleged

that they did so because of her disability.  Indeed, plaintiff has alleged that DCF took such actions

"without consideration of her disabilities."  <u>Id.</u> at 16 (plaintiff "excluded from meaningful

participation in her custody case, denied access to DCF records, and subjected to vague and

unreviewable restrictions by GAL McCalla and DCF investigators, *without consideration of her*

*disabilities*").

       B.     <u>Intentional Discrimination</u>

Plaintiff alleges that McCalla and DCF investigators subjected her to vague and

unreviewable restrictions.  <u>Id.</u>  This conclusory allegation does not set forth facts which plausibly

allege that DCF investigators knew of her disability or explain how they discriminated against her

because of any such disability.  Plaintiff therefore has not stated a claim for intentional

discrimination.

       C.     <u>Failure to Accommodate</u>

 Plaintiff alleges generally that DCF failed to accommodate her disability.  A public entity

must provide a reasonable accommodation under the ADA when it knows that the individual is

---

[12]     Plaintiff's complaint of exclusion from meaningful participation in her custody case
appears to relate to Judge O'Grady's rulings, not DCF actions.  <u>See</u> <u>First Amended Verified</u>
<u>Complaint</u> (Doc. #13) at 6 (after plaintiff served DCF with subpoena for records, Judge O'Grady
restricted viewing at the courthouse without copying, which hindered access to exculpatory
evidence); <u>id.</u> at 8 (Judge O'Grady obstructed her access to justice).

disabled and "requires an accommodation of some kind to participate in or receive the benefits of its services." J.V., 813 F.3d at 1299; see 28 C.F.R. § 35.130(b)(7)(i) (public entities must "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability"). A public entity is on notice that an individual needs an accommodation when it knows that an individual requires one, either because that need is obvious or because the individual requests an accommodation. J.V., 813 F.3d at 1299.

Plaintiff does not allege that her need for accommodation was obvious. Plaintiff makes vague, conclusory allegations that her requests for accommodations included "extended response times, virtual participation, and disability recognition," but she does not plead specific facts which suggest a knowing failure to accommodate. First Amended Verified Complaint (Doc. #13) at 16–17; id. (plaintiff "has consistently requested reasonable accommodations in court proceedings and during investigations by DCF and its agents"). Plaintiff has not alleged the nature of her requests for accommodation or other facts which establish that DCF denied plaintiff's requests because of her disability. Plaintiff therefore has not stated a claim based on DCF's failure to accommodate.

The amended complaint does not allege a plausible theory how DCF denied plaintiff benefits or discriminated against her because of her disability under the ADA. The Court therefore dismisses plaintiff's ADA claim for failure to state a claim on which relief can be granted.

## V. Fraud

Plaintiff alleges that Beauchamp fraudulently confirmed abuse, which misled the state court and DCF, and caused plaintiff's separation from her children. Specifically, plaintiff alleges that Beauchamp "intended to mislead the Court and DCF, which relied on [her] misrepresentation." Beauchamp argues that plaintiff has not stated a claim on which relief can be granted.

To state a claim for fraudulent misrepresentation, plaintiff must allege facts which establish that (1) Beauchamp made an untrue statement of fact, (2) she knew it was untrue, (3) she made it with the intent to deceive plaintiff or with reckless disregard for the truth, (4) plaintiff justifiably relied on the statement and (5) plaintiff suffered damage. Gerhardt v. Harris, 261 Kan. 1007, 1013, 934 P.2d 976, 981 (1997).

Plaintiff has not alleged facts which establish the third, fourth or fifth elements of a fraudulent misrepresentation claim. The amended complaint does not allege that Beauchamp intended to deceive plaintiff or that plaintiff relied on the misrepresentation to her detriment. Instead, plaintiff alleges in conclusory fashion that Beauchamp intended to deceive others which relied on her misrepresentations (the state court and DCF). Kansas law does not recognize such a claim. Plaintiff was not misled—when Beauchamp issued her finding of abuse, plaintiff allegedly knew that the finding was false. Plaintiff has not pled facts which suggest that Beauchamp intended to deceive plaintiff or that plaintiff justifiably relied to her detriment on Beauchamp's statement. The Court therefore dismisses plaintiff's fraud claim against Beauchamp for failure to state a claim.

## VI.    Intentional Infliction Of Emotional Distress

Plaintiff alleges that Beauchamp intentionally inflicted emotional distress on plaintiff. Beauchamp argues that plaintiff has not stated a claim because a finding of abuse does not rise to the level of outrageous conduct.

To state a claim under Kansas law for intentional infliction of emotional distress, plaintiff must allege facts which establish that (1) defendant's conduct was intentional or in reckless disregard of plaintiff; (2) defendant's conduct was extreme and outrageous; (3) defendant's conduct caused plaintiff's mental distress; and (4) plaintiff's mental distress is extreme and severe.

Valadez v. Emmis Comm'ns, 290 Kan. 472, 476, 229 P.3d 389, 394 (2010).

Plaintiff's amended complaint is devoid of facts from which the Court could conclude that Beauchamp's conduct was extreme and outrageous. See First Amended Verified Complaint (Doc. #13) at 5 (Beauchamp relied on secondhand therapist and caregiver statements, did not review Merritt's findings and refused to provide dates of interviews with children); id. at 6 (Beauchamp failed to investigate defamatory social media statements by Crawford and Nichols); id. at 15–16 (Beauchamp's substantiated abuse based on unverified social media posts without investigation); see also Plaintiff's Memorandum In Opposition To Defendants' Motion To Dismiss (Doc. #34) at 7 (finding based on speculation, hearsay and constitutionally protected speech). Beauchamp's alleged failure to fully investigate and verify the statements of therapists, caregivers or social media posts is not "so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Roberts v. Saylor, 230 Kan. 289, 293, 637 P.2d 1175, 1179 (1981).

Plaintiff also has not alleged facts to suggest that Beauchamp's conduct caused plaintiff's mental distress. Plaintiff asserts that she suffered "stress-induced vision loss, staph infections, home loss and disability *since October 22, 2024*." First Amended Verified Complaint (Doc. #13) at 16 (emphasis added). Because plaintiff has not alleged emotional distress that resulted from Beauchamp's finding in March of 2025, she cannot establish that Beauchamp's conduct caused any harm.

The Court therefore dismisses plaintiff's claim for intentional infliction of emotional distress for failure to state a claim on which relief can be granted.

## VII.    Request To Amend Complaint

In opposing defendants' motion to dismiss, plaintiff states that if the Court finds that her

complaint is deficient, she seeks leave to amend.  Plaintiff's Memorandum In Opposition To Defendants' Motion To Dismiss (Doc. #34) at 5, 8.  The Court disregards any motion or request to amend which does not comply with District of Kansas Rule 15.1(a).  Under that rule, a party filing a motion to amend that may not be filed as a matter of right must (1) set forth a concise statement of the amendment or leave sought; (2) attach the proposed pleading or other document; and (3) attach a redlined version of the proposed amendment that shows all proposed changes to the pleading.  D. Kan. Rule 15.1(a); see Requena v. Roberts, 893 F.3d 1195, 1204 n.3 (10th Cir. 2018) (insufficient to merely suggest that party should be allowed to amend if judge finds pleadings deficient; party must file written motion for leave to amend, giving adequate notice of basis of proposed amendment).  Because plaintiff has not satisfied any of these requirements, the Court overrules her request to amend the complaint.

**IT IS THEREFORE ORDERED** that the Motion To Dismiss Plaintiff's Amended Complaint Pursuant To Federal Rules Of Civil Procedure 12(b)(1) And (6) And Memorandum In Support (Doc. #31) which DCF, Michelle Merritt and Ashley Beauchamp filed July 16, 2025 is **SUSTAINED.  Pursuant to Rule 12(b)(1), Fed. R. Civ. P., the Court dismisses Counts I and II of the First Amended Verified Complaint (Doc. #13) filed May 8, 2025 against DCF for lack of jurisdiction.  Pursuant to Rule 12(b)(6), Fed. R. Civ. P., the Court dismisses Count IX of the First Amended Verified Complaint (Doc. #13) against DCF for failure to state a claim on which relief can be granted.  Pursuant to Rule 12(b)(6), Fed. R. Civ. P., the Court dismisses plaintiff's claims against Merritt in her official and individual capacities (Counts I and II) for failure to state a claim on which relief can be granted.  Pursuant to Rule 12(b)(6), Fed. R. Civ. P., the Court dismisses plaintiff's claims against Ashley Beauchamp in her official and individual capacities (Counts I, II, III, V, VI, VIII and IX) for failure to state a**

claim on which relief can be granted.  No claims remain against DCF,  Michelle Merritt or Ashley Beauchamp.

IT IS FURTHER ORDERED that on or before December 3, 2025, plaintiff shall show cause in writing why, pursuant to 28 U.S.C. § 1915A(b), the Court should not dismiss her claims against Randy McCalla (Counts I, II, III, V, VI, VII, VIII and IX) and John Doe Supervisors 1–5 (Counts I, II, IV, V and VIII) for failure to state a claim on which relief can be granted.

Dated this 20th day of November, 2025 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge